303 So.2d 373 (1974)
Thomas John KWASNIEWSKI, Appellant,
v.
STATE of Florida, Appellee.
No. U-382.
District Court of Appeal of Florida, First District.
November 21, 1974.
John Paul Howard, Jacksonville, for appellant.
Robert L. Shevin, Atty. Gen., and Donald K. Rudser, Asst. Atty. Gen., for appellee.
McCORD, Judge.
Appellant, Thomas John Kwasniewski, was charged with possession and sale of marijuana and possession and sale of LSD and the jury returned a verdict of guilty on all four charges. This appeal is from the court's judgment and sentence.
Deputy Sheriff Taylor of the Duval County Sheriff's Department, who was working under cover, and one Billy Wasserman, an informant for the Sheriff's Department, went to appellant's home because the informant "believed that he could purchase some drugs there." The testimony of appellant and that of the state's witnesses is conflicting on the events and particularly on the substance of the conversations that thereafter occurred. Appellant has raised several points upon which he relies for reversal, but we consider that only one of them has merit  whether or not the trial court erred in denying appellant's requested instruction on entrapment. From the evidence adduced in this case, the answer *374 to this question depends upon whether or not appellant presented evidence which entitled him to a charge on entrapment. If we consider only the state's evidence, such charge would not have been proper, but when we look at the appellant's evidence, we find that it should have been given.
The following is a summary of pertinent portion of appellant's testimony. Appellant testified that when Wasserman and Officer Taylor came to his house, Wasserman introduced Taylor as a friend who was seeking a pound of marijuana and Taylor asked appellant if he had a pound of marijuana. Appellant replied that he did not and Taylor then asked if he knew where he could get some. Appellant replied, "I'm not sure, but I will go check." Taylor asked if there were any other kind of drugs that he could purchase and appellant said he did not know. Taylor asked him, "Was there any kind of chemicals, such as LSD or anything, or mescaline." Appellant replied that he had no idea. Appellant and Wasserman left to go to the house of a friend appellant had met through his work who did not have a telephone and lived about seven miles away. Taylor stayed at appellant's house with appellant's wife. Appellant and Wasserman arrived at the trailer of appellant's friend, one Richard. Wasserman stayed in the automobile and appellant walked up to the trailer and knocked and said, "There's somebody at my house who is seeking a pound of marijuana and some chemicals, some drugs." Richard said that he didn't have a pound of marijuana, but he knew where he could get it, and he would have somebody bring it to appellant's place. Appellant told him, "Well, the guy said he will sit there and wait for it." Appellant and Wasserman then went back to appellant's house where they all waited for Richard to arrive with the pound of marijuana. When he arrived, he came in the door with a brown paper bag containing the pound of marijuana and asked appellant what he should do with it. He handed it to appellant who put it on the table and asked Taylor to inspect it and appellant "stood off in the back while Richard and Mr. Taylor made their transaction." Appellant did not participate in their conversation. Richard sold Taylor the pound of marijuana for $200 and five pills of mescaline for $2 each. Richard and Taylor had a further discussion about future transactions in which appellant did not participate and they left. Appellant testified that no one paid him any money for anything and he did not share in any of the money that was given by Taylor to Richard. On cross examination, appellant was asked if Taylor and Wasserman threatened him in any way to go find the marijuana. Appellant replied, "Well, they wouldn't let me rest in peace until I went to find this marijuana." He was then asked, "What do you mean by resting in peace?"; to which he replied, "Well, they would sit in the living room and keep nagging and nagging you, and I don't care if it takes four hours  as long as you can get them what they are seeking, they will sit there for the time and they didn't care if it took a month,  he wanted a pound of marijiuana." Appellant testified that he had seen marijuana several times before but had never sold any. To explain why he went to Richard's trailer he said, "I have known Richard for a while and I used to work with him and I knew that he smoked pot and that is why I went over to see if he knew where any marijuana was; because I knew that he smoked pot." He stated that he had never done this before.
The Supreme Court of Florida in Langford v. State, 111 Fla. 506, 149 So. 570, in discussing the law of entrapment, quoted from the opinion of the Supreme Court of the United States in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 212, 77 L.Ed. 413, as follows:
"It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does *375 not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises... . A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute."
A defendant has the right to have the jury instructed on the law of entrapment where evidence is presented tending to prove the defense of entrapment. Where such is the case, it is the jury's province to resolve the conflict on this factual issue under proper instructions from the court. We conclude that there was evidence which tended to prove the defense of entrapment and appellant was, therefore, entitled to have the jury instructed thereon.
Appellant has raised another question which does not merit reversal but which would require a change of sentence. Appellant contends that he could not legally be convicted of both possession and sale of the same drugs. Since each respective possession and sale count of which appellant was convicted are but facets or phases of the same transaction, sentence may be imposed only upon each sale conviction  sale being the highest offense charged. Here appellant was sentenced on each of two counts of sale and each of two counts of possession (the sentence to run concurrently). He should have only been sentenced on each of the two sale counts. See Yost v. State, Fla.App. (3rd), 243 So.2d 469.
We have considered the other points raised by appellant on this appeal in conjunction with the record, briefs and argument and find them to be without merit.
Reversed for a new trial.
SPECTOR, Acting C.J., and BOYER, J., concur.