493 So.2d 463 (1985)
Juan MARRERO, Appellant,
v.
The STATE of Florida, Appellee.
No. 84-1138.
District Court of Appeal of Florida, Third District.
October 8, 1985.
On Rehearing December 24, 1985.
Bennett H. Brummer, Public Defender, and Dubiner & Blumberg and Sara Blumberg, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and G. Bart Billbrough, Asst. Atty. Gen., for appellee.
Before HENDRY, BASKIN and FERGUSON, JJ.
HENDRY, Judge.
This is an appeal by the defendant, Juan Marrero, from his conviction and sentence *464 for attempted trafficking in cannabis. For the reasons which follow, we reverse.
The defendant was initially charged, along with two other individuals, with trafficking in cannabis [§ 893.135, Fla. Stat. (1983)], and conspiracy to traffic in cannabis [§ 777.04 and § 893.135, Fla. Stat. (1983)]. At a jury trial to the three defendants, Marrero's counsel stated in his opening statement that the defendant would show he had been entrapped into participation in a "sting" operation whereby the City of Miami Police were the ones selling the drugs and the defendant had no prior intention to commit a crime and, but for the actions of the confidential informant, would not have done so.
The defendant subsequently took the stand and testified that he had lived in this country for 19 years and had known the confidential informant casually for about three years and that they both had come from the same town in Cuba. He stated that beginning in March, 1983 and continuing during the six month period prior to his arrest, he had been contacted by the informant who asked if he wanted to sell some marijuana. The informant had contacted him some 20 to 30 times during this period, by telephone, at home and on the job site. The defendant had refused these offers, stating that this was illegal, and had asked the informant to stop bothering him. The last time he was approached he had been out of work for two months and had fallen behind on the mortgage on his family home. (The defendant was 56 years old at the time of trial and had a blood pressure problem which he stated prevented him from working full-time; he obtained odd jobs as a carpenter.) The informant showed the defendant a sample of the marijuana he could provide him to sell and told the defendant it was an easy job and a way for him to get some money. The defendant testified that he gave in because of his "economical problems."
There was additional testimony from the undercover detective who provided the marijuana which the defendant was to sell. The detective testified that the informant first gave him the defendant's name on September 15, 1983 and he met with him that day and showed him a sample of the marijuana to be sold. He did not know the circumstances of the informant's contact with the defendant. The defendant's fee was to be $10 per pound, or a total of $1,500 for 150 pounds of marijuana. Arrangements were made for the prospective purchasers and undercover detectives to consummate the transaction at the defendant's home on the evening of September 16, 1983. There, one of the co-defendants checked one of the two bales of marijuana the detectives had brought over in the defendant's truck and then left to get the money for the deal. Upon his return, surveillance units moved in and arrested defendant Marrero and the other two defendants.
At the close of all the evidence at trial the court denied the defendant's renewed motion for judgment of acquittal, based on the entrapment defense, as to the trafficking charge. (The court had previously entered a judgment of acquittal as to the conspiracy charge.) During the jury charge conference, the defendant's counsel requested the court to instruct the jury on the law of entrapment. Relying upon case law presented by the state, the trial court refused to give the entrapment instruction [Fla.Std.Jury Instr. (Crim.) 3.04(c)].[1],[2] The *465 jury found the defendant guilty of the lesser included offense of attempted trafficking in cannabis. This appeal followed.
The defendant first contends on appeal that the trial court erred reversibly in failing to give the requested standard jury instruction on entrapment. As a general rule, it is incumbent on the trial court to instruct the jury on the law applicable to the defendant's theory of defense where evidence is introduced to support such instruction. Hudson v. State, 408 So.2d 224 (Fla. 4th DCA 1981); Williams v. State, 395 So.2d 1236 (Fla. 4th DCA 1981); Williams v. State, 356 So.2d 46 (Fla. 2d DCA 1978); see Rodriguez v. State, 396 So.2d 798 (Fla. 3d DCA 1981). When a defendant presents evidence tending to prove the defense of entrapment, he has a right to have the jury instructed on the law of entrapment. Kwasniewski v. State, 303 So.2d 373 (Fla. 1st DCA 1974); Koptyra v. State, 172 So.2d 628 (Fla. 2d DCA 1965). While these principles apply to the case at bar, we decline to dispose of this case on the narrow ground of failure to give the entrapment instruction.
The Florida Supreme Court has recently announced, in Cruz v. State, 465 So.2d 516 (Fla. 1985), a new, bifurcated test of the entrapment defense, which we find controlling here.
In Cruz v. State, the supreme court engaged in a lengthy analysis of the body of federal law on the entrapment defense. The court discussed the development of two views of entrapment: the majority view which is a subjective approach focusing on the predisposition of the defendant, and the minority, objective view focusing on the nature of police or official conduct. Id. at 519-521. The court found that
the subjective and objective entrapment doctrines can coexist. The subjective test is normally a jury question. The objective test is a matter of law for the trial court to decide... . In other words, the court must first decide whether the police have cast their nets in permissible waters, and, if so, the jury must decide whether the particular defendant was one of the guilty the police may permissibly ensnare.
Id. at 521-522. The court formulated
the following threshold test of an entrapment defense: entrapment has not occurred as a matter of law where police activity (1) has as its end the interruption of a specific ongoing criminal activity; and (2) utilizes means reasonably tailored to apprehend those involved in the ongoing criminal activity.
Id. at 522.
The court in Cruz applied this threshold, objective test in reviewing a second district court opinion, State v. Cruz, 426 So.2d 1308 (Fla. 2d DCA 1983), which reversed the trial court's ruling granting the defendant's Florida Rule of Criminal Procedure 3.190(c)(4) motion to dismiss the information on grounds the arrest constituted entrapment as a matter of law. The Florida Supreme Court concluded that the "drunken bum" police decoy operation at issue in Cruz constituted entrapment as a matter of law and quashed the district court's decision.
In the instant case the defendant did not file a Rule 3.190(c)(4) motion to dismiss. *466 He did, however, request that the court grant his renewed motion for judgment of acquittal on the basis of entrapment, thereby preserving the issue for our review. Our disposition of this case is in accordance with the now prevailing law on entrapment, as established in State v. Cruz. See Wheeler v. State, 344 So.2d 244 (Fla. 1977), cert. denied, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979); McGoff v. State, 450 So.2d 321 (Fla. 2d DCA 1984); McIntire v. State, 381 So.2d 1154 (Fla. 5th DCA 1980).
Applying the relevant threshold test of entrapment to the facts developed in the record before us, we conclude that the police activity leading to Marrero's arrest "has overstepped the bounds of permissible conduct," Cruz v. State, 415 So.2d at 521, and thus constitutes entrapment as a matter of law. The police activity involved here consisted of the police informant's repeated inquiries of Marrero, over a six month period, whether he would sell marijuana, despite Marrero's continued refusals. The detectives had no information about any prior involvement of Marrero insuch criminal activity. Upon being made aware of his name, they immediately contacted Marrero to set up the drug sale. However, because they had made no inquiry, the police were not aware of how the informant came to know Marrero wanted to participate in the drug sale, or that the informant had persisted in requesting Marrero's participation for six months. Therefore, as a matter of law, the police activity fails to meet either of the two parts of the threshold test for entrapment: it did not "have as its end the interruption of a specific ongoing criminal activity;" nor did it "utilize means reasonably tailored to apprehend those involved in the ongoing criminal activity." Cruz v. State, 465 So.2d at 522.
As in Cruz, it thus becomes unnecessary to submit the issue of the defendant's predisposition to the trier of fact. The defendant was entitled to a judgment of acquittal based on his entrapment defense. Accordingly, we reverse and remand with directions to discharge the defendant.
Reversed and remanded, with directions.

ON MOTION FOR REHEARING
PER CURIAM.
Upon consideration after rehearing, we adhere to the opinion and decision of October 8, 1985.
FERGUSON, Judge (dissenting).
I still concur in the reversal of the conviction for failure to give a requested instruction on entrapment. My view is that appellant is entitled to only a new trial where the trial judge may objectively test whether the conduct of the police fell below standards for proper use of governmental power, and to have the jury instructed on entrapment if a trial is required.
The majority has gone beyond Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, ___ U.S. ___, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985), on which it purports to rely. In Cruz the supreme court approved a threshold objective entrapment test to be applied by the trial judge on defendant's pretrial sworn motion to dismiss. Here there was no pretrial motion.
For purposes of applying an objective entrapment test, a motion for judgment of acquittal cannot substitute for a sworn motion to dismiss. A sworn motion to dismiss assumes the truth of all the facts which are not traversed by the state, State v. Georgalis, 421 So.2d 676 (Fla. 4th DCA 1982), and does not require the court to invade the fact-finder's province. Where material facts are controverted, the motion must be denied. State v. McQuay, 403 So.2d 566 (Fla. 3d DCA 1981). On the other hand, a defendant moving for a judgment of acquittal admits facts in evidence adduced by the state and also admits every conclusion favorable to the state fairly and reasonably inferable therefrom. Lynch v. State, 293 So.2d 44 (Fla. 1974); Brown v. State, 294 So.2d 128 *467 (Fla. 3d DCA 1974). The test we should be applying here, in reviewing the trial court's denial of defendant's motion for judgment of acquittal, is whether the jury might reasonably conclude that the evidence, assuming all of it to be true, fails to exclude every reasonable hypothesis except that of guilt. Andreasen v. State, 439 So.2d 226 (Fla. 3d DCA 1983), review denied, 449 So.2d 264 (Fla. 1984); Amato v. State, 296 So.2d 609 (Fla. 3d DCA 1974).
The defense in this case, perhaps because Cruz had not yet been decided, focused solely on subjective entrapment. The defendant argued at trial and on appeal that "it is the jury's province to resolve the conflict on this factual issue under proper instructions from the court" [e.s.], relying on Kwasniewski v. State, 303 So.2d 373 (Fla. 1st DCA 1974) and Koptyra v. State, 172 So.2d 628 (Fla. 2d DCA 1965). The issue in both cases was whether there was sufficient evidence to warrant a jury instruction on entrapment.
As I understand it, the vehicle for applying the new Florida objective entrapment "threshold" test is a reviewable and waivable pretrial motion to dismiss. Cruz, 465 So.2d at 523 (Overton, J., specially concurring). Application of the test by a motion for judgment of acquittal is procedurally incorrect. Substantively it cannot be said that appellant would have been entitled to discharge as a matter of law even if a timely sworn motion to dismiss had been presented.
NOTES
[1] The state argued, and the trial court ruled, that entrapment was not a defense to the charge of possession of illegal drugs under the holdings of a line of cases from the second district: English v. State, 301 So.2d 813 (Fla. 2d DCA 1974), cert. dismissed, 312 So.2d 747 (Fla. 1975); State v. Smail, 337 So.2d 421 (Fla. 2d DCA 1976); and Beasley v. State, 354 So.2d 934 (Fla. 2d DCA 1978), see discussion infra n. 2. The prosecution against the defendant was proceeding on the basis that trafficking was established, under section 893.135(1)(a), by the defendant's mere possession of the requisite amount of marijuana, hence, the state's argument.
[2] The cases on which the trial court relied in denying the defendant's request for an entrapment instruction, English, Smail, and Beasley, and particularly English and Beasley, stand for the proposition that entrapment is not a defense to a charge of possession of illegal drugs. State v. Smail did not apply the per se rule of English and Beasley; Smail held only that activities which constituted entrapment in regard to a charge of sale of illegal drugs could not taint a conviction for the separate offense of possession of marijuana which the defendant admitted he had all along. The import of English and Beasley was, however, later severely limited by the second district court's opinion in Cooper v. State, 378 So.2d 793, 794 (Fla. 2d DCA 1979), wherein the court explained that "the ... [English] statement is too broad and that English states not that entrapment could never be a defense to possession of a controlled substance, but only that it was not a defense under the facts of that case." Thus, the cases relied upon by the trial court did not, despite the state's argument to the contrary, represent a correct statement of the law, and formed the basis for an erroneous ruling on the requested entrapment instruction.